**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIE WHITE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-1941** |
| | : | |
| **L.C.J. / INMATE ACCOUNTS,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**ROBRENO, J.**                                                                      **MAY 27, 2022**

Plaintiff Willie White, a pretrial detainee at Lehigh County Jail ("LCJ") filed this *pro se* civil rights Complaint naming as Defendants "L.C.J. Inmate Accounts Officials," Chris Miller, head of inmate accounts at LCJ, and LCJ Warden Kyle Russel.[1]  Each are named in their official capacities.  For the reasons that follow, the Court will grant White leave to proceed *in forma pauperis* and dismiss the Complaint.

## I.      FACTUAL ALLEGATIONS

White asserts violations of the federal mail fraud statute and his constitutional rights. (ECF No. 5 at 3.)  He alleges that funds in his inmate trust account, which he uses to buy hygiene supplies and envelopes to mail legal material, were frozen by prison officials.  (*Id*. at 5.)  In

---

[1] White originally submitted his Complaint with the docket number of one of his other civil actions.  In an Order filed on May 16, 2022 in that action (Civ. A. No. 22-1226, ECF No. 22), the Court directed the Clerk to strike the filing from that docket and open a new civil action. His Complaint was docketed in this Civil Action as ECF No. 3.  White then separately submitted a version of the same pleading, that the Clerk appended to ECF No. 3, and also docketed separately as an Amended Complaint.  (*See* ECF No. 5.)  The main differences between the two versions are that the Amended Complaint is signed while the first version was not, and the Amended Complaint contains more detail.  The Court will cite to the allegations in the Amended Complaint and adopt the pagination supplied by the CM/ECF docketing system.  Liberally construing the pleadings however, the Court will also review any allegation contained in original version (ECF No. 3.)

handwritten pages attached to the form White used to file his pleading, he asserts that on

September 22, 2021, he "received a cash slip for 1813.51 [dollars] from inmate accounts" at

LCJ.  (*Id*. at 12.)  A week earlier, he received an order signed by Judge Anthony of the Lehigh

County Court of Common Pleas freezing his inmate account.[2]  (*Id*.)  Apparently, White's federal

tax refund or stimulus check had been deposited into the account.  (*Id*.)  He asserts the check was

sent by the United States Treasury on July 23, 2021 and received at LCJ on July 28, 2021.  (*Id*.)

He alleges that "they withheld my check from 7/28/21 to 9/22/21 so they could get a Judge to

sign their petition to freeze our accounts."  (*Id*.)  White asserts that there were 24 inmates whose

accounts were similarly frozen, all of whom were minorities.  (*Id*.)  He asserts that his "legal or

non priviledged [sic] mail" – presumably the envelope containing the refund check – was opened

outside of his presence, constituting a First Amendment violation.  (*Id*.)  He also asserts his

Fourth Amendment right to privacy and due process rights were violated on April 27, 2022 when

he "went in front of the Hon. Judge Michelle Varridnio and she sided with (Cost-N-Fines) the

County and seized 100% of my Stimulus money."  (*Id*. (parenthetical in original).)  In other

words, the Court understands White to be asserting that the Defendants successfully received a

court order to freeze his inmate account, and then successfully obtained a court order to seize the

funds to pay his court costs and fines.  White also alleges that Defendant Miller, as head of

inmate accounts at LCJ, "had [to] have knowledge of the crimes.  LCJ it happened under there

[sic] nose and watch.  So quoting the master-servant rule they are liable"  (ECF No. 3 at 4.)

White seeks monetary damages.

---

[2] Attached to his pleading is a copy of a "Request for Transcript or Copy" that White signed directed to Judge James T. Anthony of the Lehigh County Court of Common Pleas seeking transcripts for hearings that allegedly took place on October 11, 2021 and December 6, 2021.  (ECF No. 5 at 14.)

## II.  STANDARD OF REVIEW

The Court grants White leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss White's Amended Complaint if it fails to state a claim. The Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As White is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.  DISCUSSION

### A.  The Federal Mail Fraud Statute

White seeks money damages for violation of the federal mail fraud statute.  Courts have held that there is no private right of action created by the federal mail fraud statute, 18 U.S.C. § 1341.  *See Jones v. TD Bank*, 468 F. App'x 93, 94 (3d Cir. 2012) (*per curiam*) ("To the extent that Jones attempted to sue under the Federal Mail Fraud statute, 18 U.S.C. § 1341, he lacked a private right of action to do so.") (citing *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999) (collecting cases)).  Therefore, this claim is not plausible and will be dismissed with prejudice.

**B.      Civil Rights Claims**

White seeks money damages for violation of his constitutional rights.  The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Also, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

**1.      Official Capacity Claims**

In drafting his Complaint, White checked the boxes on the form he used indicating that he seeks to name the Defendants in their official capacities.  White appears not to have understood the implication of checking the official capacity box.  Claims against county-level officials named in their official capacity are indistinguishable from claims against the governmental entity that employs those Defendants, here Lehigh County.  *See Kentucky v.*

4

*Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only

another way of pleading an action against an entity of which an officer is an agent.'") (quoting

*Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity

suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Because

White does not attempt to allege facts demonstrating the elements of official capacity claims, *see*

*Monell*, 436 U.S.at 694 (holding that, to state a claim for municipal liability, a plaintiff must

allege that the defendant's policies or customs caused the alleged constitutional violation), the

official capacity claims are not plausible and must be dismissed.[3]  However, the Court will

liberally construe the Complaint as also asserting claims against the Defendants in their

individual capacities.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To

determine whether a plaintiff sued state officials in their official capacity, we first look to the

---

[3] White does allege that "it happened under there [sic] nose and watch.  So quoting the master-servant rule they are liable."  (ECF No. 3 at 4.)  To the extent that, in using these words White attempts to allege a *Monell* claim, the allegation is not plausible.  To plead a basis for liability against a municipal entity such as Lehigh County under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury."  *Id.* (internal quotations and alterations omitted).  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).  White's assertion that it "happened under there [sic] nose and watch" fails to allege any policy or custom of Lehigh County and is too vague and generalized to support a plausible claim.

complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

## 2.    Individual Capacity Claims

White has named as Defendants unknown "L.C.J. Inmate Accounts Officials," Chris Miller, head of inmate accounts at LCJ, and LCJ Warden Kyle Russel.  None of his allegations, save one sentence, describe how any of these individual were involved in violating his civil rights.  Other than name the unknown Inmate Account Officials and Warden Russel in the caption of his pleading, White never specifically mentions them again.  Miller allegedly, as head of inmate accounts at LCJ, "had [to] have knowledge of the crimes."  (ECF No. 3 at 4.)  As noted, White also asserts even more vaguely that "it happened under there [sic] nose and watch. So quoting the master-servant rule they are liable" (ECF No. 3 at 4.)  It appears from these allegations that White seeks to hold the Defendants liable on a theory of *respondeat superior* and to hold Miller and Russel liable because they hold supervisory positions at LCJ.

White's attempt to employ a theory of *respondeat superior* is not plausible.  The United States Supreme Court has held that liability in a § 1983 action must be based on personal involvement, not *respondeat superior*.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).  Such involvement must be "shown through allegations of personal direction or of actual knowledge and acquiescence."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  The allegation that Miller "had [to] have knowledge" is also entirely speculative and unsupported by any actual facts.

6

White's attempt to hold the Defendants liable as supervisors is also not plausible.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho*, 423 F.3d at 354)).  White has failed to allege that any Defendant established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, and he has failed to allege personal involvement.  Accordingly, the individual capacity claims are also not plausible.

Even if White had alleged a plausible basis for supervisor liability, his underlying claims would still be subject to dismissal with prejudice.  First, to the extent that White alleges that his funds were frozen, withheld or taken from him, a constitutional claim based on the loss of

7

property cannot proceed.  Putting aside that the funds were allegedly seized pursuant to a court

order, a prisoner detained by Lehigh County cannot state a constitutional claim based on the loss

of his property.  *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (*per curiam*) ("'[A]n

unauthorized intentional deprivation of property by a state employee does not constitute a

violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*,

468 U.S. at 533)).  While the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Con.

Stat. § 8541, provides "no local agency shall be liable for any damages on account of any injury

to a person or property caused by any act of the local agency or an employee thereof or any other

person," there are exceptions to this grant of immunity.  *See id*. § 8542(b).  One such exception is

that a political subdivision like Lehigh County may be held

> liable for damages on account of an injury to a person or property within the
> limits set forth in this subchapter if both of the following conditions are satisfied
> and the injury occurs as a result of one of the acts set forth in subsection (b):
>> (1) The damages would be recoverable under common law or a statute
>> creating a cause of action if the injury were caused by a person not having
>> available a defense under section 8541 (relating to governmental
>> immunity generally) or section 8546 (relating to defense of official
>> immunity); and
>> (2) The injury was caused by the negligent acts of the local agency or an
>> employee thereof acting within the scope of his office or duties with
>> respect to one of the categories listed in subsection (b).  As used in this
>> paragraph, "negligent acts" shall not include acts or conduct which
>> constitutes a crime, actual fraud, actual malice or willful misconduct.

*Id.* § 8542(a).  Because, under these provisions, White has a meaningful post-deprivation remedy

available for his property loss claim in an appropriate state court, his constitutional claim is not

plausible and must be dismissed.

Second, to the extent White asserts a claim based upon prison officials opening the

envelope containing his tax refund check outside of his presence, he has not alleged a plausible

8

First Amendment violation because the opening and inspecting of a prisoner's non-legal mail "is reasonably related to the legitimate penological interest of institutional security." *Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir. 2008) (*per curiam*); *Aguiar v. Recktenwald*, No. 13-2616, 2015 WL 5829727, at *7 (M.D. Pa. Sept. 30, 2015) ("It is well-settled that prison personnel do not violate the First Amendment by inspecting and reading an inmate's outgoing non-legal communications." (citing cases)).  Additionally, since "[p]rison inmates have no expectation of privacy regarding their personal mail," White cannot state a plausible claim based on allegations that prison officials reviewed his personal, non-legal mail or other communications.  *Ali v. Howard*, No. 05-102, 2008 WL 4427209, at *5 (D. Del. Sept. 30, 2008), *appeal dismissed*, 353 F. App'x 667 (3d Cir. 2009) (*per curiam*); *Booze v. Wetzel*, No. 13-2139, 2016 WL 4191041, at *5 (M.D. Pa. Apr. 5, 2016) ("[A]lthough inmates retain the right to send and receive personal mail, in general, prisoner non-legal mail can be opened and read outside of an inmate's presence without violating a prisoner's constitutional rights."), *report and recommendation adopted*, 13-2139, 2016 WL 4158771 (M.D. Pa. Aug. 5, 2016).  Thus, any claim that prison officials opened his tax refund check outside of his presence fails to allege a plausible constitutional claim.

Third, White's assertion that inmates whose accounts were similarly frozen were minorities fails to allege a plausible equal protection claim.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his

9

membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016)

(citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).  "Persons are

'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant

aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants

were motivated by racial animus.  *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin

v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir.

1986)).

White's allegations are not plausible because he does not allege he was treated differently

than other similarly situated inmates – i.e., inmates who received tax refunds/stimulus funds and

who were liable for the payment of judgments, criminal fines, or court costs.  While he asserts

that detainees whose accounts were frozen and seized were minorities, he does not allege that the

accounts of non-minorities who received tax refunds and were liable for the payment of

judgments, criminal fines, or court costs did not have their accounts frozen or their refunds

seized.  He also fails to allege that he was treated differently as a result of intentional

discrimination based on his membership in a protected class.  Moreover, since he asserts that the

funds were both frozen and seized due to court orders, any assertion of intentional discrimination

or race-based animus by prison officials is not plausible.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss White's Amended Complaint.  Because

any attempt to amend his mail fraud and constitutional claims for property loss, invasion of

privacy, and equal protection violation would be futile, the dismissal will be with prejudice.  *See

Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district

courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile.").  An appropriate Order follows.

BY THE COURT:

*Eduardo C. Robreno*

**EDUARDO C. ROBRENO, J.**

11